# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

HARNESS, DICKEY & PIERCE, P.L.C.,
a Michigan Professional Limited Liability
Company,

Plaintiff,

v.

POWERHOUSE MARKS, LLC,
a Michigan Limited Liability Company,

Defendant.

_____/

Case: 2:08-cv-10292
Judge: Cook, Julian Abele
Referral MJ: Whalen, R. Steven
Filed: 01-22-2008 At 02:48 PM
HARNESS, DICKEY & PIERCE V POWERHOU
SE MARKS (LMW)

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Thomas G. Parachini (P22832)
David D. O'Brien (P65532)
Attorneys for Plaintiff
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420

COLLINGS, EINHORN, FARRELL & ULANOFF,
P.C.
Brian E. Einhorn (P13130)
Donald D. Campbell (P43088)
Co-counsel for Plaintiff
4000 Town Center – Suite 909
Southfield, Michigan 48075
(248) 355-4141

## COMPLAINT FOR DECLARATORY RELIEF

NOW COMES Plaintiff Harness, Dickey & Pierce, P.L.C., by and through its attorneys,

and for its Complaint for Declaratory Relief against Defendant Powerhouse Marks, LLC

("Powerhouse"), states as follows:

## PARTIES

1.     Plaintiff Harness, Dickey & Pierce, P.L.C. is an eighty-five year old law firm which advises clients in all aspects of intellectual property matters. Harness, Dickey & Pierce, P.L.C. ("Harness Dickey") is a Michigan professional limited liability company with a principal place of business located in the City of Troy, Oakland County, Michigan.

2.     Defendant Powerhouse purports to be the owner of several trademarks for health clubs. Powerhouse is a Michigan limited liability company with a principal place of business located in the City of Farmington Hills, Oakland County, Michigan.

## JURISDICTION AND VENUE

3.     On October 6, 2004, Harness Dickey brought suit on Powerhouse's behalf against Chi Hsin Impex, Inc. ("Impex") in the United States District Court for the Eastern District of Michigan ("Lawsuit").

4.     The Lawsuit alleged that Impex had violated the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, by using Powerhouse's federally registered POWERHOUSE trademarks on fitness equipment.

5.     In May of 2006, the Lawsuit was tried before a jury.

6.     On May 11, 2006, the jury issued an advisory verdict under the Lanham Act in Powerhouse's favor, and found that Powerhouse was "entitled to recover $719,000."

7.     On June 27, 2006, Harness Dickey filed a Motion for Judgment under 15 U.S.C. § 1117, seeking entry of judgment awarding a trebled reasonable royalty, Impex's profits, and a permanent injunction under 15 U.S.C. § 1116(a), among other things.

- 2 -

8.      On June 28, 2006, Harness Dickey filed a Motion for an Award of Attorney Fees under 15 U.S.C. § 1117.

9.      On December 4, 2006, the Court issued an Opinion and Order granting in part and denying in part the June 27 and June 28 Motions.

10.     The Court refused to award Powerhouse Impex's profits, holding that "awarding Powerhouse the profits Impex earned on the sale of its 'Powerhouse' brand fitness equipment would be grotesquely out of proportion to Powerhouse's circumstances and therefore would create an unjustifiable enrichment or windfall to Powerhouse. Such an award also would impose excessive punishment upon Impex."

11.     On other hand, the Court ruled that it would treble the actual damages found by the jury from $719,000 to $2,157,000.

12.     The Court also ruled that it would award Powerhouse some of its attorney fees.

13.     Before either party filed a Notice of Appeal, Powerhouse agreed to settle the Lawsuit, and other legal disputes, with Impex.

14.     On January 2, 2008, Powerhouse sent a letter to Harness Dickey alleging that Harness Dickey was guilty of legal malpractice arising out of Harness Dickey's representation of Powerhouse in the Lawsuit. *See* Exhibit A.

15.     The letter threatened imminent legal action against Harness Dickey by the filing of a claim in state court. *Id.*

- 3 -

16.     By letter on January 21, 2008, Harness Dickey declined Powerhouse's demand to settle this matter. A true copy of Harness Dickey's letter is attached as Exhibit B.

17.     A state court would not have jurisdiction of a legal malpractice action based upon the allegations set forth in Powerhouse's January 2, 2008 letter.

18.     As a result, there is an actual case or controversy between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

19.     This Court has subject matter jurisdiction over this case or controversy under 28 U.S.C. § 1388(a) because Powerhouse's claim against Harness Dickey necessarily depends on resolution of a substantial question of federal trademark law under the Lanham Act, in that the relief available under the Lanham Act is a necessary element of its claim.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), since Harness Dickey and Powerhouse both transact business and reside within this District, and the legal representation at issue in this lawsuit took place here.

## GENERAL ALLEGATIONS

21.     In March 2004, Powerhouse retained Harness Dickey to enforce its rights to the POWERHOUSE trademark against Impex.

22.     On October 6, 2004, Harness Dickey filed a complaint against Impex alleging that Impex violated the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, by using Powerhouse's federally registered POWERHOUSE trademarks on fitness equipment.

-4-

23.     At trial, Harness Dickey presented testimony by Powerhouse's expert witness, Creighton G. Hoffman, that Impex realized $17.65 million in profits from selling fitness equipment bearing a POWERHOUSE trademark. Mr. Hoffman also testified that had Impex taken a license from Powerhouse to use the trademark POWERHOUSE, Impex would have paid approximately $4.4 million in royalties, which he calculated by applying a hypothetical royalty rate to Impex's total sales of the infringing product.

24.     During closing argument, Harness Dickey asked the jury to award Powerhouse the entirety of Impex's profits, as well as a reasonable royalty reflecting the amount suggested by Mr. Hoffman during the course of his testimony.

25.     Harness Dickey asked for a jury instruction, which the Court gave, advising the jury that: "You may award plaintiff all profits earned by Impex that are attributable to the infringement."

26.     Harness Dickey asked for another jury instruction, which the Court gave, which provided: "[Y]ou may award plaintiff its actual damages in the form of lost royalty income that Impex would have had to pay plaintiff for its use of plaintiff's trademarks." The instruction further stated that the jury was to calculate the royalty based upon the "expert testimony" that it had heard at trial.

27.     On May 11, 2006, the jury issued an advisory verdict under the Lanham Act in Powerhouse's favor, and found that Powerhouse was "entitled to recover $719,000."

28. On June 27, 2006, Harness Dickey filed a Motion for Judgment and associated relief under 15 U.S.C. § 1117, seeking entry of judgment awarding a trebled reasonable royalty, Impex's profits, and a permanent injunction under 15 U.S.C. § 1116(a), among other things.

29. On June 28, 2006, Harness Dickey filed a Motion for an Award of Attorney Fees under 15 U.S.C. § 1117.

30. On December 4, 2006, the Court issued an Opinion and Order granting in part and denying in part the June 27 and June 28 Motions.

31. The Court refused to award Powerhouse Impex's profits, holding that "awarding Powerhouse the profits Impex earned on the sale of its 'Powerhouse' brand fitness equipment would be grotesquely out of proportion to Powerhouse's circumstances and therefore would create an unjustifiable enrichment or windfall to Powerhouse. Such an award also would impose excessive punishment upon Impex."

32. Specifically, the Court found that: (1) Impex's sale of fitness equipment did not divert any sales or business from the products and service sold by Powerhouse; (b) there was no actual confusion or damage to Powerhouse's reputation or goodwill arising from Impex's infringement; (c) Impex's profits were not attributable to its use of Powerhouse's trademark; and (d) Powerhouse unreasonably delayed in enforcing its trademark rights insofar as it was aware of Impex's infringing activity five years before it filed its lawsuit. A true copy of the Court's Opinion and Order is attached as Exhibit C.

33. Within seventeen (17) days of entry of judgment, Powerhouse entered into a settlement with Impex for $3,200,000, which included Impex's agreement not to bring suit

- 6 -

against Powerhouse in China, where Impex has superior rights to the POWERHOUSE trademark.

34.    Powerhouse now alleges that Harness Dickey committed legal malpractice in the prosecution of the Lawsuit by obtaining "a verdict, judgment, and settlement substantially less than what it would have received but for [Harness Dickey's] malpractice." Exh. A, ¶ 27.

35.    Powerhouse's malpractice claim is predicated on the verdict form by which the jury rendered its award. In particular, Powerhouse contends that Harness Dickey was negligent in drafting and/or stipulating to a form which did not specifically instruct the jury to:  (a) disgorge Impex's profit, or (b) calculate a royalty based on Impex's sales of the infringing product. Exh. A, ¶ 26.

36.    Powerhouse contends that it lost "as much as $50.8 million as a result of Harness Dickey's flawed verdict form." Exh. A, ¶ 23.

### COUNT I

37.    Harness Dickey restates and realleges the allegations set forth in paragraphs 1 though 36 as if fully set forth herein.

38.    Harness Dickey is entitled to a judicial declaration that a legal malpractice claim against it as described in paragraphs 34 through 36 cannot be asserted in state court.

39.    As a result of the above facts, a case of actual controversy within this Court's jurisdiction exists between Harness Dickey and Powerhouse.

40.     Harness Dickey is entitled to a judicial declaration that it was not professionally

negligent.

WHEREFORE, Plaintiff Harness, Dickey & Pierce, P.L.C. respectfully requests that the

Court enter an order:

A.     Declaring that Harness Dickey did not commit and is not liable for any legal

malpractice in connection with any aspect of its representation of Powerhouse in the Lawsuit

against Impex;

B.     Awarding Harness Dickey its costs and reasonable attorney fees in bringing the

present action; and

C.     Granting such further and other relief as is just and equitable.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: _____
       Thomas G. Parachini (P22832)
       David D. O'Brien (P65532)
Attorneys for Plaintiff
150 W. Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420

and

COLLINGS, EINHORN, FARRELL & ULANOFF, P.C.
Brian E. Einhorn (P13130)
Donald D. Campbell (P43088)
Co-counsel for Plaintiff
4000 Town Center – Suite 909
Southfield, Michigan 48075
(248) 355-4141

Dated:   January 22, 2008

DELIB:2931351.5\038456-00010

- 8 -



EDWARD G. LENNON PLLC
ATTORNEY AND COUNSELOR AT LAW
322 NORTH OLD WOODWARD
BIRMINGHAM, MICHIGAN 48009
elennon@lennonlawpllc.com

TELEPHONE
(248) 723-1276

FACSIMILE
(248) 646-2920

January 2, 2008

**VIA HAND DELIVERY ONLY**

David A. Roback
Harness, Dickey & Pierce, PLC
5445 Corporate Drive, Ste. 400
Troy, MI 48098

**Re:  Powerhouse Marks LLC**

Dear Mr. Roback:

I have been retained by Powerhouse Marks, LLC ("Powerhouse") to represent it in investigating and prosecuting legal malpractice claims against Harness, Dickey & Pierce, P.L.C. and certain of its attorneys (collectively "Harness Dickey") arising out of Harness Dickey's representation of Powerhouse in a lawsuit that was tried in Federal Court in May, 2006.

For the reasons set forth in the draft Complaint enclosed with this letter, Powerhouse and I strongly believe that meritorious legal malpractice claims exist against Harness Dickey.  As a measure of good faith, Powerhouse has authorized me to provide to you this draft Complaint and invite Harness Dickey to participate in settlement discussions designed to avoid the filing of this lawsuit and the attendant publicity that such a lawsuit may generate.  If Harness Dickey is willing to participate in meaningful settlement discussions, with the understanding that any settlement of these claims would require a cash payment in the seven figure range, please contact me and we can schedule a meeting.

If I do not hear from you by Friday, January 18th, my client and I will conclude that Harness Dickey does not wish to enter into meaningful settlement discussions, and the Complaint will be filed during the week of January 21st.  If that happens, I would like to know whether you will accept service of the Complaint on behalf of both the firm and the individually named attorneys.

I look forward to hearing from you.

Very truly yours,

EDWARD G. LENNON PLLC

Edward G. Lennon
elennon@lennonlawpllc.com

EGL/cac
Enclosures
cc:    Henry Dabish



Founded in 1852
by Sidney Davy Miller



THOMAS G. PARACHINI
TEL (313) 496-7550
FAX (313) 496-8454
E-MAIL
parachini@millercanfield.com

**Miller, Canfield, Paddock and Stone, P.L.C.**
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
TEL (313) 963-6420
FAX (313) 496-7500
www.millercanfield.com

MICHIGAN: Ann Arbor
Detroit • Grand Rapids
Kalamazoo • Lansing
Saginaw • Troy

FLORIDA: Naples
ILLINOIS: Chicago
MASSACHUSETTS: Cambridge
NEW YORK: New York

CANADA: Windsor, ON
POLAND: Gdynia
Warsaw • Wrocław

January 18, 2008

*Via Facsimile & First Class Mail*
Mr. Edward G. Lennon, Esq.
Edward G. Lennon, PLLC
322 N. Old Woodward
Birmingham, MI 48009

     Re:   Powerhouse Marks, LLC

Dear Mr. Lennon:

We have been retained by Harness, Dickey & Pierce, P.L.C., George T. Schooff, David P. Utykanski and Brent G. Seitz to represent them with respect to the claims raised by your client Powerhouse Marks, LLC in your January 2, 2008 letter to David A. Roback of Harness, Dickey & Pierce. Harness, Dickey & Pierce and Messrs. Schooff, Utykanski and Seitz unqualifiedly deny Powerhouse Marks, LLC's allegations of breach of their duty of care regarding their representation of Powerhouse Marks, LLC in the litigation entitled *Powerhouse Marks, LLC v. Chi Hsin Impex, Inc., et al.* which resulted in a favorable jury verdict for Powerhouse Marks, LLC.

We have reviewed and considered the draft complaint that accompanied your January 2nd letter, the relevant pleadings and filings in the case and the opinions and findings of the court. It is our conclusion that your client's claims are without merit. Accordingly, your suggested settlement discussions would not be productive.

               Sincerely,

               Miller, Canfield, Paddock and Stone, P.L.C.

     By: _____

               Thomas G. Parachini

TGP/sjm
cc:   Brian D. Einhorn, Esq.
DELIB:2931627.4\038456-00010



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POWERHOUSE MARKS LLC,

      Plaintiff,

v.

CHI HSIN IMPEX, INC., COSTCO
WHOLESALE CORP., DICK'S SPORTING
GOODS, INC., DUNHAM'S ATHLEISURE CORP.,
MEIJER, INC., and WAL-MART STORES, INC.,

      Defendants.

                       /

Case No. 04-73923
Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY FEES

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 4, 2006.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Plaintiff Powerhouse Marks L.L.C. ("Powerhouse") filed this action alleging that

defendants infringed its "POWERHOUSE" trademark. The matter proceeded to trial

against all defendants, except defendant Wal-Mart Store, Inc. ("Wal-Mart"), on May 1,

2006.[1]  On May 11, 2006, the jury returned a verdict in favor of Powerhouse. Presently

---

[1]Powerhouse and Wal-Mart reached a settlement prior to trial. On April 27, 2006,
the Court signed a Stipulated Order entering a permanent injunction against Wal-Mart
and dismissing Wal-Mart from this action. *See* Docket No. 242. The Stipulated Order

before the Court is Powerhouse's motion for judgment, filed June 27, 2006, in which it

seeks the following: (1) judgment against defendants for violating the Lanham Act and

the Michigan Consumer Protection Act; (2) damages in the form of a trebled reasonable

royalty; (3) an award of the profits of defendant Chi Hsin Impex ("Impex"); (4)

Powerhouse's costs to pursue this action; (5) prejudgment interest; and (6) a permanent

injunction. Also pending is Powerhouse's motion for an award of attorney fees, filed

June 28, 2006.

## The Jury's Verdict

This Court instructed the jury on the remedies it could award Powerhouse if it

found defendants liable for trademark infringement, unfair competition, or for violating

the Michigan Consumer Protection Act. Those remedies included all profits earned by

Impex as a result of its infringement and Powerhouse's actual damages due to the

infringement, such as lost royalty revenue. *See* 5/11/06 Trial Tr. at 100-02. The Court

also instructed the jury that the final question on the Verdict Form asked it ". . . to

determine what amount you believe Powerhouse is entitled to recover." *See id.* at 107.

Following the Court's instructions, the jury began its deliberations and returned a verdict

later the same day. *See id.* at 107 & 111.

---

further provides, *inter alia*, that Powerhouse and Wal-Mart are to bear their own costs and
attorney fees. *See id.* ¶ 10. Based on Powerhouse's and Wal-Mart's settlement and the
Stipulated Order, the Court assumes that Powerhouse is not now seeking additional
remedies from Wal-Mart. The Court's current Opinion and Order, therefore, do not apply
to Wal-Mart.

Before the jury's verdict was announced, however, the Court sent the jury back to the jury room in order to confirm with the parties' attorneys the meaning of the last question on the Verdict Form. *See id.* at 111-14. Specifically, the Court wanted to determine whether the parties intended the jury's answer to the last question on the Verdict Form to indicate the total amount the jury believed Powerhouse should be entitled to recover, regardless of its answers to preceding questions. *See id.* Counsel for both parties indicated to the Court that the jury's answer to the last question, regardless of any amounts set forth in earlier questions, should be the total amount Powerhouse is entitled to recover. *See id.*

As indicated on the Verdict Form, the jury concluded that Powerhouse had proven that Impex's sale of "Powerhouse" brand fitness equipment created a likelihood of confusion. *See* Docket No. 250. The jury further concluded that Powerhouse "has . . . proven by a preponderance of the evidence that, at the time of Impex's initial use of 'Powerhouse,' that Impex intended to derive a benefit from [Powerhouse's] goodwill or reputation." *See id.* On the Verdict Form, the jury was asked to make separate findings as to Impex's profits from the sale of "Powerhouse" brand fitness equipment up to October 6, 2004 (the date Powerhouse filed its lawsuit) and from that date forward. *See id.* The jury answered $17 million and $650,000 respectively. *See id.* The jury was further asked to provide a "reasonable royalty rate for Impex's use of 'Powerhouse' on its fitness equipment" during those two periods. *See id.* According to the Verdict Form, the jury concluded that a 4% royalty rate would be reasonable for the period up to October 6,

3

2004, and that a 6% royalty rate would be reasonable for the period after the lawsuit was filed. *See id.* As to the amount Powerhouse is entitled to recover, the jury answered $719,000.

### Powerhouse's Arguments and Defendants' Response

Relying on 15 U.S.C. § 1117(a), Powerhouse now asks the Court in its motion for judgment to enter a monetary award substantially higher than the jury's award. Specifically, Powerhouse asks the Court to order Impex to pay it a reasonably royalty of $4,637,305 for all of Impex's infringing sales. Powerhouse reaches this figure by applying the 4% and 6% royalty rates supplied by the jury to Impex's total sales-- those amounts, according to the testimony of Powerhouse's expert, being $98,791,453.44 prior to the date the lawsuit was filed and $11,427,449.52 for the period thereafter. Powerhouse further asks the Court to treble its lost royalty damages to $13,911,915, arguing that an award of $4,637,305 is inadequate in light of Impex's willful infringement and when measured against Impex's total profits of $17,650,000 from the sale of "Powerhouse" fitness equipment.

Powerhouse also asks the Court to disgorge Impex of the total profits it earned from its infringing sales, contending that such an award is necessary to make Impex's infringement unprofitable and to deter Impex from engaging in future infringement. Powerhouse further argues that the Court should award it Impex's profits because the jury concluded that Impex willfully infringed Powerhouse's trademarks and because, Powerhouse argues, Impex is a "serial infringer."

4

Powerhouse also seeks the costs it incurred in pursuing this lawsuit against Defendants and prejudgment interest on Impex's profits and/or the award for lost royalty revenue, calculated from the date Powerhouse's claims accrued. Finally, with respect to its motion for judgment, Powerhouse asks the Court to enter a permanent injunction "enjoining all Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction, from using 'POWERHOUSE' or any mark that is confusingly similar to 'POWERHOUSE' in the fitness industry." *See* Pl.'s Mot. for Judgment ¶ 36. In its separate motion, but also relying on Section 1117(a), Powerhouse seeks an award of attorney fees "on the order of $1.5 million." *See* Pl.'s Mot. for an Award of Attorney Fees ¶ 3.

Defendants respond to Powerhouse's motion for judgment, arguing that the jury's verdict adequately compensates Powerhouse and that Powerhouse simply is attempting to selectively retry those findings of the jury which it dislikes. Defendants argue that an increase in the jury's monetary award only will serve to punish Impex; but, Defendants contend, the purpose of an award under the Lanham Act is to compensate the trademark holder, not to penalize the infringer. Thus Defendants urge the Court to not adjust the jury's verdict.

As to the additional remedies Powerhouse seeks, Defendants argue that only properly taxable costs should be awarded and that prejudgment interest should not be awarded to Powerhouse due to its undue delay in filing this action. Defendants do not

5

object to the entry of a permanent injunction– although they argue that one is unnecessary

as Impex ceased its use of the POWERHOUSE mark and does not intend to use the mark

again. Defendants contend, however, that Powerhouse's proposed injunction is overly

broad in that it enjoins use of the mark in the "fitness industry" rather than simply for

"fitness equipment."

### Applicable Law and Analysis

15 U.S.C. § 1117(a) sets forth the remedies available to a plaintiff prevailing in a

trademark infringement action:

> When a violation of any right of the registrant of a mark
> registered in the Patent and Trademark Office, a violation
> under section 1125(a) or (d) of this title, or a willful violation
> under section 1125(c) of this title, shall have been established
> in any civil action arising under this chapter, the plaintiff shall
> be entitled, subject to the provisions of sections 1111 and
> 1114 of this title, and subject to the principles of equity, to
> recover (1) defendant's profits, (2) any damages sustained by
> the plaintiff, and (3) the costs of the action. The court shall
> assess such profits and damages or cause the same to be
> assessed under its direction. . . . In assessing damages the
> court may enter judgment, according to the circumstances of
> the case, for any sum above the amount found as actual
> damages, not exceeding three times such amount. If the court
> shall find that the amount of the recovery based on profits is
> either inadequate or excessive the court may in its discretion
> enter judgment for such sum as the court shall find to be just,
> according to the circumstances of the case. Such sum in
> either of the above circumstances shall constitute
> compensation and not a penalty. The Court in exceptional
> cases may award reasonable attorney fees to the prevailing
> party.

15 U.S.C. ¶ 1117(a). This section "grants a district court a great deal of discretion in

6

fashioning an appropriate remedy in cases of trademark infringement." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997) (citing *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed. Cir. 1984)). As the plain language of Section 1117(a) indicates, Congress granted district courts the power, based on principles of equity, to increase or decrease a jury's monetary award. *See* 15 U.S.C. § 1117(a).

### Damages and Profits

As Section 1117(a) provides, the court, in its discretion, may enter judgment for any sum above the amount found as actual damages, not exceeding three times that amount. 15 U.S.C. 1117(a). Additionally, if the court finds the amount of recovery based on profits to be inadequate or excessive, it may, in its discretion, increase or decrease the amount of the plaintiff's award. *Id.* "'Profits are awarded under different rationales including unjust enrichment, deterrence, and compensation.'" *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 607(6th Cir. 1991) (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989)). The Sixth Circuit has advised that "'[t]he trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party.'" *Id.* at 606 (quoting *Ruolo*, 886 F.2d at 941). The statute specifically provides, however, that the sum to be recovered by the plaintiff "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a); *see also Metric & Multistandard Components Corp. v. Metric's Inc.*, 635 F.2d 710 (8th Cir. 1980).

The jury in this case set forth an amount that it believed Powerhouse should be entitled to recover. The jury was not asked to specify whether that amount represented

Powerhouse's actual damages, a portion of Impex's profits, or some combination of both

remedies. It appears clear to this Court, however, that the $719,000 figure upon which

the jury decided represents actual damages to Powerhouse based on lost royalty revenue.

Thus the Court concludes that the jury did not award Powerhouse any of Impex's profits,

although the Court specifically instructed the jury that it could do so. For the reasons

discussed below, the Court believes that the jury's decision to not disgorge Impex of its

profits should be left undisturbed. However, because the jury found that Impex intended

to derive a benefit from Powerhouse's goodwill or reputation at the time of its initial use

of the POWERHOUSE mark and because courts have found that the remedies imposed

under Section 1117(a) also are intended to deter future infringing activities, the Court will

exercise its discretion and treble the actual damages found by the jury.[2]

---

[2]The Court rejects Powerhouse's offer to find lost royalty revenue in the amount of $4,637,304 based on Impex's sales, as opposed to its profits. There was testimony that royalty rates are not always determined by sales. *See* 5/4/06 Trial Tr. at 141 (Creighton G. Hoffman). Additionally, as the Sixth Circuit has explained with respect to lost royalty revenue, an award is based on a price to which the parties hypothetically would have agreed:

> Under long-standing case law in this circuit, to adopt a reasonable royalty as the measure of damages is to adopt and interpret, as well as may be, the fiction that a license was to be granted at the time of beginning the infringement, and then to determine what the license price should have been. . . . the proper measure is to calculate what the parties would have agreed to as a fair price for [the defendant's use of the plaintiff's trademark].

*Mid-Michigan Computer Sys., Inc. v. Marc Glassman, Inc.*, 416 F.3d 505 (6th Cir. 2005) (internal quotations and citations omitted). As parties are free to negotiate any method

In this Court's view, awarding Powerhouse the profits Impex earned on the sale of its "Powerhouse" brand fitness equipment would be grotesquely out of proportion to Powerhouse's circumstances and therefore would create an unjustifiable enrichment or windfall to Powerhouse. Such an award also would impose excessive punishment upon Impex. Several considerations lead the Court to this conclusion.

First, this Court has found, and Powerhouse's representatives acknowledged during the trial, that Powerhouse has never attempted to market home fitness equipment for retail sale and has never licensed any other company to sell such equipment under the POWERHOUSE name. *See* Docket No. 220 at 5; 5/1/06 Trial Tr. at 118 (William Dabish); 5/2/06 Trial Tr. at 133 & 146-47 (Krystal Dabish). Not only does Powerhouse not sell or license fitness equipment, but the Court does not believe that there was any evidence introduced at trial showing or even suggesting that Impex's sale of fitness equipment diverted any sales or business from the products and services that Powerhouse does sell. Second, there was no credible evidence introduced at trial of actual confusion

_____

for calculating a reasonable royalty, this Court does not believe that a hypothetical calculation by the court or a jury should be limited to the defendant's sales. Moreover, the Court believes that the Verdict Form– which was adopted largely as proposed by Powerhouse and which Powerhouse approved– likely conveyed to the jury that lost royalty damages should be based on profits as opposed to sales. The Verdict Form instructed the jury to find Impex's profits; immediately below the inquiries regarding Impex's profits, the jury was asked to state a reasonable royalty rate for Impex's use of the "Powerhouse" name. Notably, the jury was not asked to find the total amount of Impex's sales of "Powerhouse" branded fitness equipment. Thus, if the Court concluded that a reasonable royalty rate must be based on Impex's sales, it is uncertain how it now would calculate that amount.

9

or damage to Powerhouse's reputation or goodwill arising from Impex's use of the POWERHOUSE mark. In fact, Powerhouse previously was not able to present evidence of any damage to its reputation due to Impex's infringement and therefore the Court ruled that Powerhouse was not entitled to damages in the form of damage control costs. *See* Docket No. 220 at 5-6. Thus the Court does not believe that disgorgement is necessary to serve either of the two purposes of trademark statutes identified by Congress when it enacted the Lanham Act: first, to compensate the trademark owner (i.e. Powerhouse) for energy, time, and/or money it has spent protecting the reputation of its mark; and second, to "'protect the public so it may be confident that, in purchasing a product bearing a particular trademark which it favorably knows, it will get the product which it asks for and wants to get.'" *Monsanto Chem. Co. v. Perfect Fit Prod. Mfg. Co.*, 349 F.2d 389, 395 (2d Cir. 1965) (quoting S. Rep. No. 1333, 79th Cong., 2d Sess. 102 (1946), in U.S. Code Cong. Serv. 1274 (1946)).

The Court further finds a disgorgement of profits inappropriate because the evidence indicated that Impex's profits were not attributable to its use of the "Powerhouse" name. A number of witnesses, specifically individuals employed by the retail defendants, testified that when their stores stopped selling Impex's fitness equipment under the "Powerhouse" name and began selling the same products under a new name, sales did not fall and, in some cases, they actually increased. *See* 5/8/06 Trial Tr. Morning Session at 28-29 (David Stockmeyer); 5/9/06 Trial Tr. at 11 (Bill Shepardson), 40 & 44 (Hai-I Wong). There also was evidence that consumers purchase

10

Impex's products based on its quality and price, not because of the "Powerhouse" name. *See* 5/9/06 Trial Tr. at 11 (Bill Shepardson) & 40-44 (Hai-I Wong); 5/8/06 Trial Tr. Afternoon Session at 40 (Annie Chung). The Sixth Circuit specifically has found that equity is not served by an award to the plaintiff of a percentage of the defendant's profits where the evidence indicates that none of the defendant's profits were attributable to its use of the plaintiff's mark. *See Frisch's Rest., Inc. v. Elby's Big Boy of Steubenville, Ohio,* 849 F.2d 1012, 1016 (6th Cir. 1988).

Finally, and perhaps the most important reason why this Court believes that it would be inappropriate to disgorge Impex of its pre-suit profits, is Powerhouse's delay in enforcing its rights. As this Court previously found, Powerhouse was aware of Impex's use of the POWERHOUSE mark at least five years before it filed this lawsuit. In the meantime, defendants expended considerable effort and financial resources selling "Powerhouse" fitness equipment and Impex's profits grew. Powerhouse would reap a windfall if this Court awarded it the profits Impex earned during the period that Powerhouse was sleeping on its rights.

### Costs

Powerhouse is entitled to its costs in bringing this action pursuant to Section 1117(a) and Federal Rule of Civil Procedure 54(d)(1). Defendants recognize this, but they argue that Powerhouse's costs should be limited to those specified in 28 U.S.C. § 1920 and they point out that Powerhouse is not entitled to costs against Wal-Mart based on the Court's April 27, 2006 Stipulated Order. The Court therefore awards costs to

11

Powerhouse. The Court agrees with Defendants that those costs should be limited to those specified in Section 1920 and that Powerhouse should not include in its Bill of Costs any costs related to Wal-Mart.

## Prejudgment Interest

Although Section 1117(a) does not provide for prejudgment interest, the Sixth Circuit has held that such an award is within the discretion of the trial court, but "is normally reserved for 'exceptional' cases." *Wynn Oil Co. v. Am. Way Service Corp.*, No. 94-1294, 1995 WL 431019, at *3 (6th Cir. July 20, 1995) (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)). "Exceptional cases" are "those cases in which the infringement was 'malicious, willful, fraudulent, or deliberate.'" *Wynn Oil Co. v. Am. Way Service Corp.*, 943 F.2d 595, 607 (6th Cir. 1991) (quoting *Frisch's Rest.*, 849 F.2d at 1017). While the Court finds this to be an "exceptional" case based on the jury's verdict that Impex intended to derive a benefit from Powerhouse's goodwill or reputation at the time of its initial use of "Powerhouse," the Court concludes that an award of prejudgment interest is inappropriate due to Powerhouse's delay in asserting its trademark rights.

## Permanent Injunction

There is no dispute that Powerhouse is entitled to an injunction, although the Court agrees with Defendants that Powerhouse's proposed injunction is too broad. The Court therefore will enter an injunction similar to the injunction contained in its April 27, 2006 Stipulated Order.

## Attorney Fees

Section 1117(a) states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). As stated above, the Court finds that this is an exceptional case based on the jury's verdict and it therefore will award Powerhouse *some* of its attorney fees. But the Court notes that it does not believe that Powerhouse's charge that it was forced to unnecessarily spend time on discovery disputes in any way factors into this Court's conclusion that this is an exceptional case.

The Court, however, has several concerns about Powerhouse's request. Foremost is Powerhouse's indication that it has incurred attorney fees "on the order of $1.5 million." While this figure may be commensurate with other trademark infringement cases, the Court expects that such extraordinary fees could have been avoided and it is not likely to require Impex to pay this amount.[3] During this Court's twenty year career on the federal bench, it has observed a few common themes in the intellectual property law cases that have come before it: the attorneys on both sides frequently fail to cooperate with one another, discovery rarely proceeds smoothly, too many discovery disputes are resolved through motions instead of through direct communication between the attorneys, and (perhaps because of the preceding troubles) costs and attorneys fees reach epic

---

[3]Moreover, the Court does not believe that it would be equitable, under the circumstances of this case, to require Defendants to pay an excessive attorney fees award.

13

proportions.[4]  The present case is not an exception, as one can glean simply from the tone of and arguments in Powerhouse's motion for attorney fees.

Another related concern is that Powerhouse may seek fees for discovery motions that this Court believes should not have been necessary.  While Powerhouse blames Defendants or Defendants' counsel for discovery problems and delays in this case, Defendants, in return, contend that Powerhouse's attorneys are, at least in part, at fault for this "unnecessary discovery litigation."  Too often, courts are required to resolve discovery disputes that should have been resolved by the parties. While in most cases the Court is able to resolve the dispute at issue, it usually is not necessary for the Court to also spend time deciding which party is at fault in the discovery dispute.  Usually the parties are satisfied that the dispute has been resolved by the Court.  Where a party believes that it has spent considerable time and expense on a discovery dispute which it believes was the sole fault of the other party, the aggrieved party can at that time, seek sanctions.[5]  When the party at that time seeks sanctions, the Court is in a better position to determine whether monetary sanctions are appropriate.  To wait until the end of the

---

[4]The Court acknowledges the unusual complexity of many intellectual property law cases; however, it does not believe that the problems identified arise primarily as a result of such complexity.

[5]Powerhouse, of course, is aware of its right to seek sanctions at the time a discovery dispute is resolved.  On November 22, 2005, Powerhouse sought fees and costs relating to a discovery dispute that was resolved by Magistrate Judge Majzoub on November 11, 2005.  Powerhouse also sought fees and costs on January 17, 2006, relating to a discovery dispute that was resolved by Magistrate Judge Majzoub on January 12, 2006.

case to seek attorney fees for these "discovery disputes" puts the Court in a very difficult position. It requires the Court to conduct a "mini-trial" with respect to each dispute for which the party seeks attorney fees to determine exactly who was at fault and what monetary sanctions should be imposed. Suffice it to say that, at this time, the Court does not intend to entertain any request for attorney fees relating to discovery disputes in this case.

As Powerhouse is awaiting this Court's ruling on its request for an award of attorney fees prior to submitting a detailed itemization of its fees, the Court cautions Powerhouse to take these concerns into account in setting forth its request for attorney fees.

### Conclusion

In summary, the Court finds that principles of equity require an increase in the amount the jury found as actual damages suffered by Powerhouse as a result of defendants' infringement. The Court further concludes that Powerhouse is entitled to the costs and some of the attorney fees it incurred in pursuing this action against defendants, except Wal-Mart. The Court also grants Powerhouse a permanent injunction. The Court, however, will not require Impex to disgorge its profits to Powerhouse and it will not award Powerhouse prejudgment interest on the damage award assessed.

Accordingly,

**IT IS ORDERED**, that Powerhouse's motion for judgment is **GRANTED IN PART AND DENIED IN PART** and a judgment will issue accordingly;

**IT IS FURTHER ORDERED**, that Powerhouse's motion for an award of

attorney fees is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
George T. Schooff, Esq.
Edward R. Schwartz, Esq.
Kathleen Lang, Esq.
Howard W. Burdett, Jr., Esq.

16

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Harness, Dickey & Pierce, PLC

**DEFENDANTS**
Powerhouse Marks, LLC

**(b)** County of Residence of First Listed Plaintiff    Oakland
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Oakland
(IN U.S. PLAINTIFF CASES ONLY)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Thomas G. Parachini (P22832) and David D. O'Brien (P65532)
Miller, Canfield, Paddock and Stone, PLC, 150 W. Jefferson Avenue, Suite 2500, Detroit, Michigan 48226

Attor

Case: 2:08-cv-10292
Judge: Cook, Julian Abele
Referral MJ: Whalen, R. Steven
Filed: 01-22-2008 At 08:44 AM
HARNESS, DICKEY & PIERCE V POWERHOU
SE MARKS (LMW)

## II. BASIS OF JURISDICTION (Select One Box Only)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZE!

(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☑ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Select One Box Only)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Declaratory Judgment Act, 28 USC 2201
Brief description of cause:
Plaintiff seeks a judicial determination that it did not commit legal malpractice in representation of Defendant in underlying trademark case.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint
JURY DEMAND: ☐ Yes ☑ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)

JUDGE      DOCKET NUMBER

DATE
January 22, 2008

SIGNATURE OF ATTORNEY OF RECORD
*Thomas G. Parachini*

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes

            If yes, give the following information:                     ☑ No

            Court: _____

            Case No.: _____

            Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other       ☐ Yes
            court, including state court? (Companion cases are matters in which   ☑ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

            If yes, give the following information:

            Court: _____

            Case No.: _____

            Judge: _____


Notes :