UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARNESS, DICKEY & PIERCE, P.L.C,
GEORGE T. SCHOOFF, DAVID P. UTYANSKI,
and BRENT G. SEITZ,

        Plaintiffs,

v.

POWERHOUSE MARKS, LLC,

        Defendant.

Case numbers 08-10292
& 08-10484
Honorable Julian Abele Cook, Jr.

## ORDER

There are two cases pending before this Court, both of which involve the same parties and pertain to the same controversy. In the first case, the law firm of Harness, Dickey & Pierce, PLC, along with several of its lawyers ("Harness Dickey") sued their former client, Powerhouse Marks, LLC ("Powerhouse"), seeking a declaratory judgment which, if granted, would declare that it did not commit legal malpractice. The second case involves a lawsuit, in which Powerhouse Marks contends that its former attorneys committed legal malpractice.

### I.

On July 7, 2008, the Court directed the parties to submit a written response that would set forth the reasons, if any, why these two lawsuits should not be consolidated. On July 14th, *Harness Dickey* filed a document which indicated that it did not have any objections to a consolidation of the two cases. Seven days later, Powerhouse filed a response which expressed no opposition to a consolidation. On the basis of its belief that a merger of these two cases for trial purposes would

1

constitute an efficient and expeditious method of addressing the issues which currently divide the parties, the Court will, and does, consolidate these two legal proceedings (Case Numbers 08-10292 and 08-10484) forthwith. Furthermore, the parties shall file all subsequent pleadings with the same entitlement and case numbers as listed herein above.

II.

Prior to this date, the parties filed several motions, all of which shall now be addressed and resolved by the Court. In the case of *Powerhouse* v. *Harness Dickey*, (1) Powerhouse seeks to obtain a remand of this litigation to a state court as authorized by 28 U.S.C. § 1447(c), and (2) *Harness Dickey* has asked the Court to dismiss this lawsuit, citing to Federal Rule of Civil Procedure 12(b)(6) as the basis for its request. With regard to the second case (*Harness Dickey* v. *Powerhouse*), the Court has been requested by Powerhouse to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56(c).

II.

Powerhouse is the owner of several trademarks, all of which are associated with health and fitness clubs throughout the nation. On the other hand, Harness, Dickey & Pierce is a law firm with its principal office in Troy, Michigan. The remaining parties (to wit, George T. Schooff, David P. Utykanski and Brent G. Seitz) were purportedly members of the Harness Dickey law firm during all of the times that are relevant to this litigation.

On October 6, 2004, Powerhouse, with Harness Dickey acting as its counsel, filed a complaint against other parties whose sales of fitness equipment had allegedly violated state and federal law. *Powerhouse, L.L.C. v. Chi Hsin Impex, Inc. et al.*, No. 04-73923 (E.D. Mich.). At the conclusion of the evidentiary portion of the *Chi Hsin Impex* trial, the judge provided the jury with

a verdict form which contained an instruction that had been proffered by Harness Dickey. According to Powerhouse, this now challenged verdict form was legally deficient in that it incorrectly prompted the jurors to base their calculation of damages on the infringer's profits rather than on its revenues. Thus, in Powerhouse's view, a correctly worded verdict form would have enabled the *Chi Hsin Impex* jury to return a treble award under the Lanham Act, 15 U.S.C. §1501 et seq., in the approximate sum of fourteen million dollars, as opposed to the award of slightly more than three million dollars which was ultimately rendered.. 15 U.S.C. § 1117(a). Harness Dickey disagrees, contending that the verdict form, about which Powerhouse complains - when read in conjunction with the instructions from the judge - provided the jury with a sufficient basis upon which to award an appropriate amount of damages in accordance with the then-existing law.

Following the completion of the *Chi Hsin Impex* trial, Harness Dickey filed a motion in an effort to obtain (1) an increase in the amount of damages, which would reflect a disgorgement of the profits by Chi Hsin Impex, and (2) a recalculation of the royalty rate that was ostensibly based upon the total amount of the proven revenues rather than the profits. Although the court ultimately trebled the amount of the jury award, it declined to grant the balance of the request for relief by *Harness Dickey*.

During the post-trial period of *Powerhouse L.L.C. v Chi Hsin Impex, Inc. et al*, the parties attempted to resolve their differences over several legal matters, including those issues relating to the alleged legal malpractice by Harness Dickey. When these efforts by the parties proved to be unsuccessful, Harness Dickey initiated a declaratory judgment action on January 22, 2008, in which it asked the Court to determine the propriety of its conduct during the *Chi Hsin Impex* trademark infringement case. *Harness, Dickey & Pierce, PLC et al. v. Powerhouse, LLC*, No. 08-10292 (E.D.

3

Mich. 2008). On the same date, Powerhouse initiated a lawsuit against Harness Dickey in one of the state courts in Michigan, asserting a claim for legal malpractice in its complaint. On January 31, 2008, Harness Dickey caused the state court case to be removed to this Court. *Harness, Dickey & Pierce, PLC et al. v. Powerhouse, LLC*, No. 08-10484 (E.D. Mich. 2008).

### III.

It is clearly established that in the absence of complete diversity among the parties, a defendant may remove a civil action from a state court to a federal court only if the plaintiff's allegations establish the existence of "original jurisdiction founded on a claim or right arising under" federal law. 28 U.S.C. § 1441(b). On the other hand, if the complaint relies only upon a state law, the district court generally lacks subject matter jurisdiction to resolve the dispute which, in turn, means that the state court action is not removable. *Palkow v. CSX Transp., Inc.,* 431 F.3d 543, 552 (6th Cir. 2005). In an effort to determine if a claim arises under federal law, the Supreme Court opined several years ago that all "well pleaded" allegations of the complaint are to be examined, and all potential defenses are to be ignored. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003).

In this case, Powerhouse has asked to have this matter remanded to a state court for the general purposes of a trial. However, it is the position of Harness Dickey that this Court does have jurisdiction to address the substantive issues under 28 U.S.C. § § 1331, 1338(a).[1] The Supreme Court has long recognized the need for federal jurisdiction in those cases in which significant

---

[1] 28 U.S.C.§ 1331 declares that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, the laws, or treaties of the United States." 28 U.S.C.§ 1338(a) states, in pertinent part, that federal courts shall have "original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks."

4

federal questions are implicated. *Hopkins v. Walker*, 244 U.S. 486, 490–91 (1917). In 2005, the Supreme Court declared that federal jurisdiction is appropriate in those situations where "a state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005) (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)) (specifically rejecting view by some courts during post *Merrell Dow* era that existence of federal cause of action was required for federal jurisdiction). Federal jurisdiction is appropriate under 28 U.S.C. § 1338 whenever the right to relief "depends on the resolution of a substantial question of federal [trademark] law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (making substantial federal question doctrine applicable directly to trademark law).

Here, Powerhouse, in its pursuit of a remand to the state court, believes that the factors in *Grable, supra,* are not applicable to this legal malpractice lawsuit. In pursuit of this point, it initially argues that the trial court has already resolved the appropriateness of the damages issue, as defined by the Lanham Act in the form of Chi Hsi Impex's profits and Powerhouse's lost royalties. Thus, Powerhouse believes that this Court should limit its review of the *Chi Hsi Impex* trial to the challenged writing within the jury verdict form.

Powerhouse also submits that even if a federal issue is found to exist in this case, it should not be considered to be substantial within the context of the controversy before the Court because (1) no federal agency was involved, (2) any claimed federal issue will not determine the outcome of this case, and (3) the interpretation of such a federal issue will not determine the outcome of

5

other cases.

Harness Dickey challenges this argument by asserting that 15 U.S.C. § 1117(a), which sets forth the remedies that are available for trademark infringement, played a central role in the state court malpractice suit, which, in turn, created a substantial question of law that establishes the jurisdiction of a federal court. It is the contention of Harness Dickey that this lawsuit, which addresses the issue of legal malpractice, will require the Court to (1) make a determination as to whether Powerhouse would have recovered a disgorgement of profits and a revenue-based royalty on the basis of the evidence that was presented to the jury during the underlying trial, and (2) undertake an analysis of substantial federal trademark law.

In *Grable*, *supra*, the Supreme Court set forth four factors for the lower courts to assess in this type of case; namely, whether (1) the case includes a federal agency, and if it complied with any of the federal statutes in dispute; (2) the federal question is important; (3) a resolution of the federal question will resolve the case; and (4) a decision as to the federal question issue will control a number of other cases. *Grable*, 545 U.S. at 318–320.

Addressing the first element under *Grable,* there is no evidence that a federal agency was involved in this case. Moreover, it does not seem likely that the fact-specific application of §1117(a) of the Lanham Act to this case will bind many future cases.[2] However, the existence of a specific damages statute in the Lanham Act does suggest that there is a strong federal interest in ensuring a specific uniform outcome in trademark disputes. More importantly, the resolution of how the Lanham Act would compensate Powerhouse plays a crucial role in the causation element

---

[2]Admittedly, an assessment of how important an interpretation of the damages issue under the Lanham Act will be to other cases may be beyond the scope of the ability of this Court to accurately assess.

of the state malpractice claim.

It should be noted that Congress created a federal cause of action for trademark infringement and specified the damages for such an infringement. The only legal malpractice cases that are permitted into the federal forum are those in which the underlying action could have had access to the federal court due to the existence of a federal cause of action. It would be an odd result for federal courts to adjudicate trademark disputes, and - at the same time - find itself precluded from adjudicating the subsequent legal malpractice suit on the basis of its interpretation of federal law. Although Powerhouse is correct when it argues that trademark jurisdiction is not exclusive whereas the issue over patent jurisdiction is - by contrast - exclusive, this argument has not been interpreted by the Court to mean that Congress intended to keep those litigating parties who desire to submit their dispute out of a federal court. While tort actions, including legal malpractice, have long been considered to be state court territory, the federal courts have found jurisdiction in some legal malpractice cases that involve intellectual property and § 1338. *See e.g.*, *Immunocept v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1285 (Fed. Cir. 2007). Hence, the request by Powerhouse to have this matter remanded to a state court must be rejected.

IV.

Next, Harness Dickey asks the Court to dismiss the malpractice suit brought by Powerhouse under Fed. R. Civ. P. 12 (b)(6) for its alleged failure to state a claim upon which relief can be granted. A claim can survive such a dispositive motion if its "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007). In 2007, the Sixth Circuit Court of Appeals stated that "[w]hen a complaint adequately states a claim,

7

it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 1970. Therefore, a court must view the complaint in the light that is most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in its favor. *Id.* (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). On the other hand, the Court need not accept the truthfulness of legal conclusions or unwarranted factual allegations. *Id.*

Harness Dickey has made three arguments in support of its application for a dismissal of the complaint. First, it denies that there was a breach of any duty to Powerhouse because the jury verdict form - when read in conjunction with the jury instructions - fully and accurately stated the applicable law. Second, Harness Dickey submits that Powerhouse is collaterally estopped from arguing for the disgorgement of profits and revenue-based royalties because those damages were denied in the post-trial motions in the underlying case. Third, it challenges the specificity with which a claim for improper discovery was made, citing to Fed. R. Civ. P. 8(a).

Under Michigan law, a plaintiff must allege "negligence in the legal representation" in order to establish a legal malpractice claim. *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 585 (1994). In the case that is now pending before this Court, Powerhouse identified eight "breached duties" in its complaint, six of which center on the arguing, drafting, and submitting of the jury verdict form by its counsel. (Compl. ¶ 26(a)–(g)). Harness Dickey accurately points out that the complaint does not reference the jury instructions, which they claim ameliorate any of the potential misdirection of the jury verdict form. Thus, this law firm asks the Court to declare that there was no breach in its duty of care to Powerhouse as a matter of law. It asserts that - in the absence of this element - the claim for legal malpractice by Harness Dickey has failed and should be dismissed.

8

The law is clear that a special verdict form - such as the one at issue in this case - must be read "in conjunction with the jury instructions." *Slaughter v. Parker*, 450 F.3d 224, 241 (6th Cir. 2006). Harness Dickey correctly argues that the challenged jury instructions did provide specific guidance in line with the views by Powerhouse on damages:

> You may award plaintiff all profits earned by Impex that are attributable to the infringement . . . In determining a reasonable royalty, you may consider the following factors: the royalty that a hypothetical negotiation between plaintiff and defendant would yield, rates proposed by both plaintiff and defendant, expert testimony, royalty rates set forth in other licenses, plaintiff's licensing policies and the profitability of defendant's infringement.

(Trial Tr., *Powerhouse, L.L.C. v. Chi Hsin Impex, Inc. et al.*, No. 04-73923, at 100–02 (E.D. Mich., May 11, 2006).)

Thus, the question before the Court is whether this particular legal principle was "adequately and fairly presented to the jury." *Beach v. State From Mut. Auto Ins. Co.*, 216 Mich. App. 612, 618 (1996). Harness Dickey proclaims that this legal standard militates in favor of a dismissal because adequate instructions existed outside the jury verdict form. However, this argument does not respond to the claim by Powerhouse that the jury verdict form actively misled the jury despite the supposedly ameliorating instructions.

As a general proposition, the facts must be construed by a court when evaluating a motion to dismiss in a light that is most favorable to the non-moving party. Here, it is not possible to say as a matter of law that the instructions, when combined with the jury verdict form, accurately reflected the reasonable conduct of an attorney. The standards of the writing in a jury verdict form and their relationship with jury instructions are better left to those persons whose knowledge and expertise would enable them to make a factual determination on the specific application of those

9

standards to the facts in this case. Since the controversy over the jury verdict form affected the reasonable royalty damages claim, as well as the disgorgement of profits damages issue, the Court does not rule out legal malpractice as to either issue as a matter of law at this early stage. Accordingly, this portion of Harness Dickey's request for relief must be denied.

In Michigan, collateral estoppel is appropriate whenever (1) a question of fact that is essential to the outcome of the lawsuit was actually litigated and determined by a valid and final judgment; (2) the same parties had a full and fair opportunity to litigate the issue; and (3) the doctrine of mutuality of estoppel is applicable. *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682–84 (2004). "Where issues of fact or law have been finally decided by a court of competent jurisdiction in one legal action which are essential to the maintenance of another legal action, it is universally held that the second action must fail." *Jones v. Chambers*, 353 Mich. 674, 680 (1958).

Powerhouse contends that it did not have a full and fair opportunity to be heard during the post-trial proceedings because Harness Dickey had a conflict of interest between covering up its legal malpractice conduct and vigorously advocating for damages. It cites a Michigan case, in which the state court of appeals found that the doctrine of collateral estoppel does not apply in those situations in which the alleged malpractice caused the unfavorable ruling. *Radtke v. Miller, Canfield, Paddock & Stone*, 209 Mich. App. 606 (1995). When a court assesses whether a plaintiff had a "full and fair opportunity" to litigate an issue, "the decision will necessarily rest on the trial courts' sense of justice and equity." *Monat*, Mich. App. at 685 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333–34 (1971)).

On the basis of the existing record in this lawsuit, it does not appear that the *Chi Hsi Impex* court rendered any findings which touched upon issues of law or equity when opining about the

correctness of the damages that were awarded by the jury to compensate Powerhouse for its lost royalties. In fact, to the extent that any finding was made, the judge seems to have found that the jury was misguided by the jury verdict form when attempting to assess the amount awarded. When combined with the assertion by Powerhouse that it was denied a "full and fair hearing" which was attributed to the conflict of interest by its then-counsel, this Court is persuaded that justice and equity mandate that it be given an opportunity to make its royalty damages claim under federal law without the backdrop of an allegedly misdirected jury decision. Accordingly, this portion of the motion to dismiss that was submitted by Harness Dickey must be denied.

The Federal Rules of Civil Procedure clearly state that a plaintiff must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Supreme Court has interpreted this language to mean that the "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). In addition, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will no do." *Id.* at 64–65.

Powerhouse's complaint against Harness Dickey states only one claim; namely, legal malpractice. Harness Dickey believes that the Court should strike the portion of this claim which asserts that it "fail[ed] to properly conduct discovery, leading to unnecessary legal services, fees, and expenses." At this stage of the proceedings, the Court does not believe that Powerhouse was required to include more factual allegations than it has already presented. Accordingly, this portion of Harness Dickey's motion must also be denied.

IV.

Finally, Powerhouse has requested that this Court dismiss Harness Dickey's complaint for pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56(c). First, Powerhouse contends that the Court (1) does not have jurisdiction to hear this dispute, and (2) should decline to exercise its discretion to address and resolve this petition for declaratory relief. For the reasons that have been set forth above, the Court concludes that it does have jurisdiction over the dispute between Harness Dickey and Powerhouse. Therefore, the first portion of Powerhouse's motion must be denied.

The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction. . . any court of the United States . . . may declare the rights and other legal relations of any interested parties seeking such declaration. . ." 22 U.S.C. § 2201(a). Declaratory judgment actions are also governed by Fed. R. Civ. P. 57. Trial courts have the discretion to determine if a request for a declaratory action should be entertained. Addressing this point, the Sixth Circuit Court of Appeals has identified five factors that trial courts should use when evaluating a motion such as the one brought by Harness Dickey; namely, whether (1) the declaratory action would settle the controversy; (2) the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for *res judicata*; (4) the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) there is an alternative remedy which is better or more effective. *Grand Trunk W.R.R. Co. v. Consolidated Rail Co*., 746 F.2d 323 (6th Cir. 1984).

Given the consideration of this legal proceeding by the Court with the mirror-image case

by Powerhouse, it is clear that a resolution of this case will settle the controversy between the parties. Moreover, the conclusion of this case will clarify the legal relations in issue. It does not appear that the request for a declaratory judgment by Harness Dickey (1) falls under the category of procedural fencing, or (2) will increase friction between the ability of federal and state courts to resolve disputes expeditiously and efficiently. Finally, inasmuch as the Court, having consolidated the two cases, has concluded that it has jurisdiction over this dispute, there is no known alternative remedy which is better or more effective.

V.

For the reasons that have been set forth above, the Court enters the following orders: (1) Case Nos. 08-10292 & 08-10484 are consolidated; (2) Powerhouse's motion to remand (Case No. 08-10484 doc. # 9) is denied, and (3) the motions to dismiss (Case No. 08-10292 doc. #7 and Case No. 08-10484 doc. #6) by Harness Dickey and Powerhouse are denied.

IT IS SO ORDERED

Dated:  September 29, 2008            s/ Julian Abele Cook, Jr.
     Detroit, Michigan               JULIAN ABELE COOK, JR.
                                                  United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 29, 2008.

                                                                   s/ Kay Alford
                                                                   Case Manager